FISH, Respondent, vs. CONNECTICUT FIRE INSURANCE COMPANY, Appellant.

*September 16—October 13, 1942.*

168

For the appellant there was a brief by *Lees, Bunge & Fuller* of La Crosse, and oral argument by *H. V. Fuller.*

*J. Henry Bennett,* attorney, and *Olga Bennett* of counsel, both of Viroqua, for the respondent.

FAIRCHILD, J.  The view of the circumstances taken by appellant led it to interpose several defenses against allowance of respondent's claim under the contract policy of insurance, but the contentions of appellant were all answered by testimony properly admitted upon the trial.  So, the appellant is met on this appeal with findings of fact against it and those findings are sustained by the evidence.

Objection was made to the admission of evidence, and the assignment of error based on those rulings has been examined, but we find no prejudicial error.  The evidence showing that a full disclosure of all existing liens upon the truck was made when the insurance was asked for is ample and convincing. The appellant's agent was informed of the condition of the title.  He arranged a loan to pay previous liens and made out a check to cover the amount supposed to be due thereon, making the check payable to the respondent and the creditor.  A mistake was made in naming the amount due, but of this mistake the agent was informed.  Good faith was established in dealing with the agent and the knowledge of the agent at the time the policy was issued was "knowledge of the company," sec. 203.13 (1), Stats.

The question which caused the trial court most concern arose out of the agreement between respondent and his employee, Slaback.  Under this agreement, Slaback was to become the owner of respondent's business as a licensed contract motor carrier when he (Slaback) secured the necessary license from the public service commission, and on this contract appellant raises the point that respondent had parted with his interest in the truck.  This was a conditional sale and under the contract the property in the truck and business was to be transferred at a future time and after the proposed buyer had secured his right to engage in the business as a contract motor carrier, sec. 121.18 (1), Stats.

The intention of the parties to that agreement not only appears from the contract itself, but the conduct of the parties

recognized the fact that conditions were to be fulfilled before the sale would be complete or a delivery of the truck would occur. It was an agreement to sell in the future. Slaback continued in the employ of respondent, and he and another employee were using the truck in respondent's business, under his direction, and for his benefit, when the fire occurred. Slaback was being paid his wages as an employee at the time.

New tires were placed upon the wheels of the truck. Respondent testified, "I bought the new tires that were on the truck on a conditional sales contract and there was some back on the tires at the time of the fire." There was no investigation of the circumstances relating to the purchase of the tires. No effort was made to ascertain the amount paid or the balance due, or the relation with respect to the matter as it existed between the seller of the tires and respondent. A conditional sales contract does not freeze a transaction so that it may not be modified. The seller may waive his claim to the title in the article sold and the buyer has a right of redemption under certain circumstances after default. There was no showing upon the trial that the seller concerned himself in the case. When the tires were mentioned, and respondent was asked if he had notified the Insurance Company, the court answered that it would make no difference. That ruling was not challenged, and after respondent answered "No" to that question, the matter was dropped. The court was of the opinion that appellant lost the right to avail itself of certain defenses by reason of its course of conduct both before and after the fire. The court found that appellant had taken possession of the truck for its own protection and refused to recognize respondent's rights in the situation. This occurred almost immediately after the fire, and the proceedings for the sale under the disproved claim of the Universal Credit Company did not occur for at least three months after the fire, and the chattel mortgage under which appellant now desires to have it appear that it

acted was not purchased by it from the Monroe County Finance Company until more than a month had passed.

It further appears that the tires were not destroyed by the fire and that they were sold as a part of the salvage under arrangements to which the appellant was found to be a party. While the seller under a conditional sales contract may, if he chooses, assert title to replacements on a truck on the theory that by retaining the title in himself such equipment is separable from the truck and not an accession, on the other hand, tires or other replacements which the owner placed on the machine go with it when the title is freed of a lien either by waiver or by express agreement. A seller might choose to rely on the account without the security. 2 Berry, Automobiles (6th ed.), p. 1451, sec. 1806; *Hallman v. Dothan Foundry & Machine Co.* 17 Ala. App. 152, 82 So. 642; *Franklin Service Stations, Inc., v. Sterling Motor Truck Co. of N. E.* 50 R. I. 336, 147 Atl. 754; *K. C. Tire Co. v. Way Motor Co.* 143 Okla. 87, 287 Pac. 993. The appellant's relation to the subject in litigation does not extend to and include the matter of an accounting between the seller of the tires and respondent, and in the absence of proof of a valid and existing incumbrance the principle of accession would be applicable. There is no evidence of any harm resulting to the appellant from the replacement of the tires.

The court found that the claim of the Universal Credit Company had been fully paid before May 7, 1940, the date of the fire. Still that company assumed to act to the extent of reclaiming the truck and offering it for sale. This was done without notice to respondent. Control over the truck exercised by appellant has been referred to. Respondent testified that he promptly sought to take possession of it but his demand was denied. There was a stipulation dated May 18th, signed by Slaback, whom the court found was an employee of respondent, and the "Connecticut Fire Insurance Co. : By Western Adjustment & Inspection Co., J. J. McIntosh, Adjuster,"

in which "it is hereby agreed and determined that the sound value of the property immediately preceding May 7, 1940, and the loss and damage which occurred on that date is as follows: . . . Sound value: $700." On June 24, 1940, the appellant took an assignment of the mortgage held by the Monroe County Finance Company. A sale of the salvage took place under the proceedings referred to and the Western Adjustment & Inspection Company was the purchaser.

There was sufficient competent evidence before the trial court with reference to the value of the truck to sustain the finding that immediately before the fire it was worth the sum of $700 and due proofs of loss were made. The appellant must be held to have taken possession of the wreckage for salvage purposes under its policy provisions, thus leaving to respondent his right to recover the value of the insured property. Appellant acquired and satisfied an existing lien by taking an assignment of the chattel mortgage on which there was due $122.32, leaving a balance of $577.68 due respondent for which judgment was granted.

*By the Court.*—Judgment affirmed.